UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABIMBOLA ADELAJA,<br><br>Plaintiff,<br><br>v.<br><br>JEROME GUILLEN, *et al*.,<br><br>Defendants. | Case No. 25-cv-06558-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND SCHEDULING INITIAL CASE MANAGEMENT CONFERENCE FOR NOVEMBER 21, 2025**<br><br>Re: Dkt. No. 15 |

Pursuant to this Court's Government Shutdown Notice, the Court vacated the October 31, 2025 hearing on defendants' motion to dismiss the complaint. For the reasons set forth below, the Court DENIES the motion to dismiss the claims for intentional infliction of emotional distress and premises liability and GRANTS the motion to dismiss the claims for negligence and fraudulent transfer, without leave to amend. The Court schedules an initial case management conference for November 21, 2025 at 2:30 p.m. via zoom. The parties shall file a joint case management conference statement no later than November 14.

**BACKGROUND**

**I.    Factual Background**

This lawsuit arises from an alleged necklace-throwing incident after a day and night of partying and concert-going. Defendants Jerome Guillen and Jeremy Gallaher invited plaintiff Abimbola Adelaja ("Abe") to fly to California to attend a Beyoncé concert in late August 2023. Dkt. No. 1-1, Ex. A ("Compl.") ¶ 6. Abe and another out-of-town invitee were flown to California via commercial airplane flights paid for Gallaher and/or Guillen. *Id*. Abe alleges that at all pertinent

times, Gallaher and Guillen were involved in a romantic relationship together. *Id.* ¶¶ 2-3. Prior to the concert, Abe, defendants and other guests enjoyed a pool party at defendants' home, and "[a]lcohol and drugs were consumed by defendants and some of the guests" at the pool party and later aboard a shuttle van hired by defendants to transport the guests to the concert. *Id.* ¶¶ 7, 9. Guillen did not attend the concert and stayed home. *Id.* ¶ 15. During the concert, Gallaher was "obviously intoxicated." *Id.* ¶ 10. Abe consumed a small amount of alcohol and remained sober before, during and after the concert. *Id.* ¶ 8.

After returning to defendants' home after the concert, Gallaher was "still clearly intoxicated and acting in a belligerent manner, prompting Abe to want to leave the property." *Id.* ¶ 11. Abe went to the room he was supposed to sleep in and began to pack his bags. *Id.* Guillen came into the room and apologized for Gallaher's behavior and asked Abe not to leave. *Id.* While Abe and Guillen were speaking, "Gallaher kept trying to enter the room while still acting belligerently" and Guillen "successfully forced Defendant Gallaher out of the room several times in an attempt to protect Abe from Defendant Gallaher." *Id.*

However, Gallaher was eventually able to get into the room, and in the presence of Guillen assaulted Abe. *Id.* Gallaher threw a "large disco ball necklace" at Abe, striking Abe "squarely in the left eye from a distance of approximately four feet." *Id.* ¶ 12. The necklace consisted of jumbo Mardi Gras disco ball beads made of hollow hard plastic and weighed approximately three pounds. *Id.* Abe "immediately experienced pressure, pain, and blurred vision in his left eye, symptoms which persisted and continue to affect him to this day." *Id.*

Gallaher then attacked Guillen. *Id.* ¶ 13. The complaint references the San Mateo County Sheriff's report[1] of the incident, and that report details Gallaher's attempt to choke Guillen, for which Gallaher was arrested and booked into jail. Bittman Decl., Ex. A at 1-2 (Dkt. No. 15-1). The complaint alleges that after Guillen escaped Gallaher's chokehold, Guillen screamed "You choke

---

[1] Defendants have attached a copy of the report to the declaration of Carly Bittman, and they assert that the report shows that Abe provided a different account of events than what is currently alleged in the complaint. The Court takes judicial notice of the existence of the report but does not resolve any factual disputes based upon the document.

2

me again! You choke me again!" Compl. ¶ 13. Abe alleges on information and belief that the phrase "again" referred to prior violent attacks by Gallaher, including an incident three nights earlier in Reno, Nevada where Gallaher choked Guillen, prompting a 9-1-1 call. *Id*. The complaint also alleges on information and belief that Guillen knew about Gallaher's "known propensity for violence" when under the influence of alcohol and other intoxicants, and that it was based on this knowledge that Guillen decided not to go to the concert.    Compl. ¶¶ 15-16.

Abe alleges that medical examination and testing have revealed structural and functional evidence of traumatic optic neuropathy in his left eye, and that his "optic nerve injury and accompanying visual impairment were directly and proximately caused by the blunt trauma from the necklace" thrown by Gallaher. *Id.* ¶ 27. The injury is permanent and irreversible, and increases Abe's susceptibility to further optic nerve damage later in life. *Id.* Abe alleges that he has suffered and continues to suffer substantial economic damages as well as severe emotional distress that has manifested in many ways including trouble sleeping, increased anxiety, fear, trouble focusing, increased stress, depression, nervousness, loss of hair, and loss of enjoyment of life. *Id.* ¶ 25. Abe also alleges on information and belief that following the necklace throwing incident, Gallaher transferred substantial assets to others, including to Guillen, without consideration and with the intent that Gallaher appear insolvent and beyond the reach of creditors, including plaintiff. *Id.* ¶ 24.

Plaintiff asserts six causes of action: (1) assault against Gallaher; (2) battery against Gallaher; (3) intentional infliction of emotional distress against Gallaher; (4) negligence against both defendants; (5) premises liability against Guillen; and (6) fraudulent transfer under California Civil Code sections 3439.04, 3439.07, and 3436.09 against both defendants. Defendants have moved to dismiss the claim for intentional infliction of emotional distress; the negligence and premises claims against Guillen; and the fraudulent transfer claims against both defendants.

## II.     Procedural Background

This is the second case filed by Abe against Guillen and Gallaher arising out of the alleged necklace-throwing incident. Earlier this year, Abe filed a lawsuit in state court and defendants removed the case to this Court. This Court denied Abe's motion to remand, and before ruling on

defendants' motion to dismiss, Abe voluntarily dismissed that lawsuit without prejudice. Shortly thereafter, Abe filed this lawsuit in state court, which defendants again removed to this Court.

The complaints in both cases are similar but not identical. Defendants emphasize the similarities as well as this Court's tentative rulings to dismiss certain claims as articulated at the hearing on the motion to dismiss in the first case. Defendants also contend that because this is the second case and second complaint, the Court should dismiss the challenged claims with prejudice. Abe argues that the dismissal of the first case without prejudice, prior to any written decision by this Court on the motion to dismiss that complaint, means that there has been no substantive determination of Abe's claims and no "law of the case."

The Court generally agrees with plaintiff that the current complaint should be evaluated on its own merits and that the Court's prior tentative rulings are not determinative. However, the Court agrees with defendants that the Court can consider the fact that the current complaint is functionally an amended complaint when considering whether to grant leave to amend.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049,

4

1055 (9th Cir. 2008) (citation and internal quotation marks omitted).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.     Intentional Infliction of Emotional Distress (IIED) against Gallaher**

To assert an IIED claim, a plaintiff must show a defendant purposefully or recklessly engaged in extreme and outrageous conduct that caused severe or extreme emotional distress. *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009). "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Id.* (internal quotation marks and citation omitted).

Gallaher contends that plaintiff's allegation of suffering severe emotional distress is conclusory. The Court disagrees and finds that as a pleading matter the allegations are adequate. Abe alleges that as a result of the alleged assault, he has suffered permanent and irreversible damage to his left eye and that he has an increased chance of further optic nerve damage later in life. Compl. ¶ 27. He also alleges that he has suffered and continues to suffer severe emotional distress as a result of the incident and damage to his eye, including anxiety, depression, loss of enjoyment of life, fear, loss of hair, and difficulty sleeping, among other things. As plaintiff notes, most of the cases cited by Gallaher were decided on summary judgment. The Court recognizes that other cases analyzed the pleadings. *See Campbell v. Feld Entm't Inc.*, No. 12-cv-4233-LHK, 2014 WL 1366581, at *12 (N.D. Cal. Apr. 7, 2014) (allegations of "severe stress and anxiety, depression, and loss of sleep" held inadequate). Here, however, the Court finds that the combination of alleging permanent and irreversible damage to his eye and the lengthy list of symptoms of severe emotional distress is sufficient at this stage of the litigation. Accordingly, the Court DENIES defendants' motion to dismiss this claim.

## II.     Premises Liability against Guillen

The fifth cause of action for premises liability is alleged against Guillen only. That cause of action alleges that "Guillen owed a duty to Abe, as an invited guest, to maintain the premises in a reasonably safe condition and take reasonable steps to protect him from or warn him of known and foreseeable hazards"; that Guillen "knew that Defendant Gallaher had a history of violent behavior at Defendant Guillen's property when under the influence of alcohol and other intoxicants prior to August 30, 2025, and observed that Defendant Gallaher was becoming increasingly dangerous throughout the evening of August 30, 2023, and into the morning of August 31, 2023"; despite this knowledge, Guillen "failed to use reasonable care to protect Abe from Defendant Gallaher's foreseeable violent conduct, failed to use reasonable care to warn Abe of the known danger, and failed to use reasonable care to remove Defendant Gallaher from the property or otherwise mitigate the risk of harm"; and instead Guillen "encouraged Abe and other guests to remain in the dangerous environment[.]" Compl. ¶¶ 66-69.

The elements of a premises liability claim are "a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Kesner v. Superior Ct.*, 1 Cal. 5th 1132, 1158 (2016). "Premises liability is grounded in the possession of the premises and the attendant right to control and manage the premises; accordingly, mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act." *Id.* (internal quotation marks and citations omitted). "The proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others. . . ." *Rowland v. Christian*, 69 Cal.2d 108, 119 (1968).

Guillen contends that the premises liability claim is barred by California's "social host" immunity set forth in California Civil Code section 1741(c). That section states in relevant part, "[N]o social host who furnishes alcoholic beverages to any person may be held legally accountable for damages suffered by that person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of those beverages." Cal. Civ. Code § 1714(c). The Legislature also declared "that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the

proximate cause of injuries inflicted upon another by an intoxicated person." *Id.*, § 1714(b). In response, Abe states that his premises liability claim is not founded upon Guillen providing alcohol or other substances to Gallaher. Abe states that instead, the claim is based on the allegations that Guillen knew that Gallaher could become unpredictable, dangerous and violent when intoxicated, that Guillen invited Abe to stay at his house despite observing that Gallaher was in an intoxicated and therefore dangerous state, and failed to warn or otherwise protect Abe from Guillen.

The Court finds that as a pleading matter, Abe has alleged enough to state a claim for premises liability. As an initial matter, the Court agrees with Guillen that he cannot be held liable based on the fact that Gallaher allegedly first became intoxicated at the pool party. However, "if tort liability exists without intoxication," a provider of alcohol is not always immune "simply because intoxication is present." *Webb v. Est. of Cleary*, Case No. EDCV08-00565-RBL(AJWx), 2011 WL 13142644, at *3 (E.D. Cal. June 3, 2011). Thus, if Guillen was negligent independent of any provision of alcohol, he can still be held liable.

Guillen contends that he did not owe a duty to Abe because, absent a special relationship between the parties, "there is generally no duty to protect others from the conduct of third parties." *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 627 (2018). "However, a special relationship giving rise to such a duty has been found to exist between . . . landowner and invitee . . . ." *Anaya v. Turk*, 151 Cal. App. 3d 1092, 1098 (1984). Here, Abe alleges that Guillen invited him from out-of-state to attend the concert and stay at his house; that Guillen knew from prior experiences that Gallaher, his romantic partner, became violent and unpredictable when intoxicated; that Guillen did not attend the concert because he did not want to be around Gallaher as he continued to become more intoxicated on the way to and during the concert; and that prior to the alleged assault after the concert, Guillen asked Abe not to leave the house. Abe alleges that the assault was foreseeable to Guillen. As a pleading matter, these allegations are sufficient. *Cf. id.* at 1101 (holding "[a]n apartment dweller cannot be held to have a duty to protect friends and acquaintances from the violent criminal conduct of others on the premises unless he has reasonable cause to anticipate his violent conduct" and affirming summary judgment in favor of defendants where plaintiff guest did "not provide any evidence of prior specific acts of violence on the part of [third party] Wilson or

7

prior specific acts of violence which had occurred in or around defendant's apartment").[2]

**III.     Negligence against Guillen**

Abe alleges negligence claims against Gallaher and Guillen. Gallaher does not challenge this claim, but Guillen does. As to Guillen, Abe alleges that Guillen "failed to use reasonable care to prevent harm to Abe after voluntarily undertaking a duty to protect Abe from Defendant Gallaher." Compl. ¶ 59. Abe's opposition clarifies that he contends that Guillen is liable under the "negligent undertaking" theory of liability, citing *Paz v. State of California*, 22 Cal. 4th 550, 558-59 (2000).

"Under the negligent undertaking doctrine, 'a volunteer who, having no initial duty to do so, undertakes to provide protective services to another, will be found to have a duty to exercise due care in the performance of that undertaking if one of two conditions is met: either (a) the volunteer's failure to exercise such care increases the risk of harm to the other person, or (b) the other person reasonably relies upon the volunteer's undertaking and suffers injury as a result." *Conti v. Watchtower Bible & Tract Soc'y of New York, Inc.*, 235 Cal. App. 4th 1214, 1231 (2015) (internal quotations and citation omitted). A claim of negligent undertaking requires that "the actor failed to exercise reasonable care in the performance of its undertaking[.]" *Artiglio*, 18 Cal. 4th at 614.

The Court concludes that Abe has failed to allege facts in support of negligent undertaking. The complaint alleges that Guillen "successfully forced Defendant Gallaher out of the room several times in an attempt to protect Abe" and that Gallaher "was able to get back into the room." Compl. ¶ 11. Abe has not alleged any facts suggesting that Guillen failed to exercise due care when he tried to keep Gallaher from entering the room. The fact that Gallaher was ultimately able to enter the room and allegedly assault Abe does not, on its own, plausibly suggest that Guillen failed to exercise

---

[2] The Court also notes that many of the cases relied upon by Guillen were decided on summary judgment because although the question of duty is a legal issue, the analysis is highly dependent on the particular facts of each case. *See Artiglio v. Corning, Inc.*, 18 Cal. 4th 604, 615 (1998) ("[I]f the record can support competing inferences, or if the facts are not yet sufficiently developed, an ultimate finding on the existence of a duty cannot be made prior to a hearing on the merits.") (internal citations and quotation marks omitted). Guillen may renew his arguments that he did not owe a duty to Abe on a fuller factual record.

due care. *See Paz*, 22 Cal. 4th at 560 ("[F]ailure to alleviate a risk cannot be regarded as tantamount to increasing that risk[.]").

The Court GRANTS defendants' motion to dismiss this claim without leave to amend. Although Abe's opposition requests leave to amend, Abe does not identify any new facts that he would include to buttress this cause of action, and thus leave to amend would be futile. Further, as stated earlier, the Court views the current complaint as the functional equivalent of an amended complaint, and thus Abe has already had the opportunity to try to state a claim for negligence against Guillen.

### IV. Fraudulent Transfer against Guillen and Gallaher

In his final cause of action, Abe alleges on information and belief that Gallaher "made one or more transfers of assets" to Guillen "with the actual intent to hinder, delay or defraud Abe in his efforts to collect on any judgment or claim," and alleges several "badges of fraud" including "the transfers were made to an insider (Defendant Guillen), after the liability to Abe had been incurred, for little or no reasonably equivalent value in exchange, while Defendant Gallaher was engaged in litigation or under threat of litigation by Abe, and under circumstances indicating an intent to render Defendant Gallaher appear insolvent or judgment proof." Compl. ¶¶ 75-76.

A transfer violates the California Uniform Voidable Transactions Act (UVTA)[3] if it "involves a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1065 (N.D. Cal. 2014) (internal quotation marks and citation omitted); Cal. Civ. Code § 3439 et seq. The UVTA allows a plaintiff creditor to recover from the third-party transferee. Cal. Civ. Code § 3439.08(b)(1).

Defendants contend that the fraudulent transfer claim does not meet Rule 9(b) because the complaint does not allege any facts about the transfers, such as the nature and amount of the transfers, dates of transfers, how Gallaher made the transfers, or any specifics about when the

---

[3] This act was formerly known as the Uniform Fraudulent Transfer Act. *Chen v. Berenjian*, 33 Cal. App. 5th 811, 814 (2019).

alleged "threat" of litigation began or what it consisted of. Abe asserts that it is not clear in the Ninth Circuit whether Rule 9(b) applies to fraudulent transfer claims, and in any event, he argues that he has alleged enough to state a claim. Alternatively, Abe requests that he be allowed to conduct limited discovery in support of the fraudulent transfer claim.

Courts in the Northern district have held that Rule 9(b) applies to claims of actual fraudulent transfer. *See SBC Berlin 2012-2014, Ltd. v. Babywatch, Inc.*, Case No. 18-cv-07611-EDL, 2019 WL 13203776, at *13 (N.D. Cal. Oct. 10, 2019) (collecting cases); *see also Opperman*, 87 F. Supp. 3d at 1066. Applying this standard, the Court finds that the complaint fails to state a claim for actual fraudulent transfer. The allegations are conclusory and simply recite the elements of the claim. The complaint does not allege any facts about what assets were transferred or the dates of transfer, nor does the complaint contain any facts in support of any of the alleged "badges of fraud," such as what were the "circumstances indicating an intent to render Defendant Gallagher appear insolvent or judgment-proof." Compl. ¶ 77.

The Court GRANTS defendants' motion to dismiss this claim, and DENIES leave to amend at this time. Abe's opposition does not identify any facts that he could add in support of the fraudulent transfer claim, and indeed he implicitly acknowledges that he is currently unable to do so. If Abe learns of specific facts in support of a fraudulent transfer claim, he may seek leave to amend at that time.

### CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to dismiss the claim for intentional infliction of emotional distress against Gallaher and the premises liability claim against Guillen, and GRANTS the motion to dismiss the claims for negligence against Guillen and fraudulent transfer against both defendants.

**IT IS SO ORDERED**.

Dated: November 4, 2025

_____
SUSAN ILLSTON
United States District Judge